# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 25-5130**

**September Term, 2024**

**1:25-cv-00511-CRC**

**Filed On:** May 14, 2025

In re: U.S. DOGE Service, et al.,

      Petitioners

**BEFORE:** Henderson, Wilkins, and Childs, Circuit Judges

## O R D E R

Upon consideration of the petition for a writ of mandamus, the opposition thereto, and the reply; and the motion for stay, the opposition thereto, and the reply, it is

**ORDERED**, on the court's own motion, that the administrative stay entered on April 18, 2025, be dissolved. For the reasons stated in the memorandum accompanying this order, it is

**FURTHER ORDERED** that the petition be denied. It is

**FURTHER ORDERED** that the stay motion be dismissed as moot.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published.

**Per Curiam**

        **FOR THE COURT:**
        Clifton B. Cislak, Clerk

    BY:    /s/
           Selena R. Gancasz
           Deputy Clerk

# **M E M O R A N D U M**

The government petitions for a writ of mandamus to halt the district court's order for limited discovery into whether the United States DOGE Service (USDS) constitutes an "agency" within the meaning of the Freedom of Information Act (FOIA). The Citizens for Responsibility and Ethics in Washington (CREW) initiated the underlying litigation seeking disclosure of records reflecting USDS's organizational role, authorities, and operational reach. The government contends that the district court's order permitting narrow discovery impermissibly intrudes upon the President's constitutional prerogatives.

Mandamus is an extraordinary remedy, appropriate only when the petitioner can show that (1) it has no other adequate means to attain the relief it desires, (2) its right to the writ is clear and indisputable, and (3) issuance of the writ is appropriate under the circumstances. *See Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004) (citations omitted). In the FOIA context, whether an entity is an "agency" turns on a functional analysis: whether it "exercises substantial independent authority" or instead exists solely "to advise and assist the President." *CREW v. Office of Admin.*, 566 F.3d 219, 224 (D.C. Cir. 2009) (quoting *Armstrong v. Exec. Off. of the President*, 90 F.3d 553, 558 (D.C. Cir. 1996)); *Soucie v. David*, 448 F.2d 1067, 1073-75 (D.C. Cir. 1971). That inquiry, by its nature, depends on the practical realities of the entity's role, not merely on its formal placement or authority within the Executive Office of the President.

As an initial matter, the government forfeited its primary objection to the district court's order under *Cheney* by failing to raise that argument below. At no point during the summary judgment briefing, or in opposing CREW's discovery motion, did the government argue that the requested discovery posed a separation-of-powers issue or risked intruding into the core functions of the presidency. The government never discussed *Cheney* in its motion for summary judgment and, in its opposition to the discovery order, it merely cited *Cheney* for the proposition that courts should accord respect to the "office of the Chief Executive" and that any discovery "should be fashioned to be as unobtrusive as possible." Gov't Opp'n to Mot. for Discovery at 8 (D.D.C. Apr. 8, 2025), ECF No. 34. It did not request protective narrowing of discovery on constitutional grounds. Its opposition to discovery rested instead on assertions of burden and relevance.

On the merits, the government has also not shown that it has no other adequate means of relief. The government rests most of its argument on *Cheney*'s holding that line-by-line assertions of executive privilege were not an adequate alternative means of relief in that case. But *Cheney* is distinguishable in numerous respects. Even in the circumstances of *Cheney*, the Supreme Court declined to issue a writ because it was "not a case where, after having considered the issues, [this court] abused its discretion by failing to" do so. 542 U.S. at 391. More importantly, unlike in *Cheney*, where the Vice President himself was subject to a wide-ranging third-party subpoena and the asserted intrusion implicated the mental processes of the President's advisers, *see id.* at 381-82, the discovery here is modest in scope and does not target the President or any close adviser personally. The government retains every conventional tool to raise privilege objections on the limited question-by-question basis foreseen here on a narrow and discrete ground. Although the government protests that any such assertion of privilege would be burdensome, the only identified burdens are limited both by time and reach, covering as they do records within USDS's control generated since January 20. It does not provide any specific details as to why accessing its own records or submitting to two depositions would pose an unbearable burden. That is a far cry from the sweeping discovery at issue in *Cheney*. *See id.* at 387 (describing the discovery requests as asking "for everything under the sky"). Moreover, unlike *Cheney*, the information sought here

does not provide CREW "all the disclosure to which [it] would be entitled" if it prevails on the merits. *Id.* at 388.

Nor has the government asserted a clear and indisputable right. Petitioner can carry that burden if the challenged order constitutes a "clear abuse of discretion." *Id.* at 380 (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953)). Petitioner must "point to 'cases in which a federal court has held that' relief is warranted 'in a matter involving like issues and comparable circumstances.'" *In re Al Baluchi*, 952 F.3d 363, 369 (D.C. Cir. 2020) (quoting *Doe v. Exxon Mobil Corp.*, 473 F.3d 345, 355 (D.C. Cir. 2007)). "Accordingly, we will deny mandamus even if a petitioner's argument, though 'pack[ing] substantial force,' is not clearly mandated by statutory authority or case law." *Id.* (quoting *In re Khadr*, 823 F.3d 92, 99-100 (D.C. Cir. 2016)). Open legal questions do not present a clear and indisputable right to mandamus relief. *See In re Al-Nashiri*, 791 F.3d 71, 85-86 (D.C. Cir. 2015). We have previously endorsed limited discovery to determine agency status under FOIA. *See Armstrong*, 90 F.3d at 560-61; *CREW*, 566 F.3d at 224-26. And that limited discovery can be used to follow up on factual questions put at issue by the government's declarations. *See In re Cheney*, 544 F.3d 311, 312 (D.C. Cir. 2008) (under the Presidential Records Act). Even the government concedes, as it must, that such discovery is sometimes appropriate. Pet. 22-23.

In light of the government's failure to make a persuasive showing on either of the first two elements of the analysis, there is also no reason, in considering the totality of the circumstances, to issue the writ. *See Cheney*, 542 U.S. at 381.

Accordingly, the petition for a writ of mandamus is denied.